IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-01617-RBJ

CESAR PASILLAS-SANCHEZ,

     Applicant,

v.

RICK LIND, Warden, Arkansas Valley Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

_____

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS
_____

Applicant, Cesar Pasillas-Sanchez, has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 1) challenging the validity of his criminal conviction in the District Court of Jefferson County, Colorado.  Respondents have filed an Answer (Docket No. 19) and Applicant has filed a Reply (Docket No. 23). Having considered the same, along with the state court record, the Court will deny the Application.

## I. BACKGROUND

On August 4, 2005, Applicant was convicted in Jefferson County District Court Case No. 03CR783 of second-degree murder, two counts of theft by receiving, three counts of possession of a controlled substance, and three special offender counts. (Docket No. 1, at 2, 4; Docket No. 11-1 at 7-10).  He was sentenced to an aggregate 96-year prison term with the Colorado Department of Corrections.  (Docket No. 1 at 2).

In Applicant's direct appeal proceeding, the Colorado Court of Appeals summarized the relevant facts as follows:

> In March 2003, defendant's girlfriend of three years was found dead as a result of a single gunshot to the head. Defendant called the police and reported that she had shot herself. When police arrived on the scene, they found a handgun under the left hand of the victim, who was right-handed. Police found drugs and drug paraphernalia, as well as numerous items of stolen property, including expensive bicycles and electronics. Defendant was subsequently charged with first degree murder, two counts of theft by receiving, three counts of possession of a controlled substance, and three counts as a special offender.
>
> At trial, defendant's theory was that the victim had committed suicide. The People's theory was that the relationship between defendant and the victim had been deteriorating and defendant had shot her, either to prevent her from leaving him or to keep her quiet about his theft and drug activity. To support that theory, the People presented extensive evidence about the nature and status of the relationship between defendant and the victim, as well as scientific and forensic analysis of the crime scene and gunshot wound to show it was not self-inflicted.

*People v. Pasillas-Sanchez*, 214 P.3d 520, 523 (Colo. App. 2009) (*Pasillas-Sanchez I*). Applicant's conviction was affirmed on direct appeal. (*Id.*). The Colorado Supreme Court denied Applicant's petition for certiorari review on August 31, 2009. (Docket No. 11-6).

On January 25, 2010, Applicant filed a motion for reconsideration of his sentence, pursuant to Colo. Crim. P. Rule 35(b), which was denied by the state district court on March 22, 2010. (Docket No. 11-1 at 19-20). Applicant did not appeal the trial court's order. (*Id.* at 19).

On November 10, 2010, Applicant filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c). (*Id.* at 19). Following the trial court's denial of the motion and the counseled supplemental motion, the Colorado Court of Appeals

2

affirmed the trial court's order in *People v. Pasillas-Sanchez*, No. 13CA0097 (Colo. App.

Dec. 11, 2014) (unpublished) (*Pasillas-Sanchez II).* (Docket No. 11-10). The Colorado

Supreme Court denied Applicant's petition for certiorari review on June 22, 2015.

(Docket No. 11-12).

On July 29, 2015, Applicant filed his federal application under 28 U.S.C. § 2254

raising the following claims:

1.  Applicant was denied counsel of his choice when the trial court disqualified defense counsel because he was a potential witness. (Docket No. 1, at 10).

Applicant was denied a fair trial when the trial court declined to require the prosecution to disclose the statements of a defense expert made to the prosecution's investigator. (*Id.*).

3.  Applicant was denied a fair trial when the trial court denied his challenge for cause to a prospective juror. (*Id.*).

4.  Applicant was denied a fair trial when the trial court denied his motion to sever the theft by receiving counts. (*Id.*).

5.  Applicant's 96-year sentence is excessive and violated his right to fair sentencing.

6. Applicant's Sixth Amendment right to the effective assistance of counsel was violated because counsel failed to investigate critical issues. (*Id.*).

7.  Applicant's Sixth Amendment right to the effective assistance of counsel was violated because counsel failed to consult experts necessary to the defense. (*Id.*).

8.  Applicant's Sixth Amendment right to the effective assistance of counsel was violated "in pre-trial, trial, and post-trial situations involving competence, deligence [sic] scope of representation, and advising, as well as other deficiencies." (*Id.* at 11).

9. Applicant's Sixth Amendment right to the effective assistance of counsel was violated because counsel "fil[ed] a petition for writ of certiorari that met none of the criteria for consideration governing review on certiorari." (*Id.*).

10.  Applicant's Sixth Amendment right to the effective assistance of counsel was violated because counsel denied Applicant access to his discovery materials. (*Id*.).

In a Pre-Answer Response, Respondents conceded the timeliness of the Application under 28 U.S.C. § 2244(d).  (Docket No. 11 at 4-8).  Respondents further conceded that Applicant exhausted state court remedies for claims one and eight.  (*Id.* at 11).  Respondents argued, however, that claims two, four, five and nine were procedurally barred, and that claims six, seven and ten were unexhausted.  (*Id*.).  Respondents further contended that claim three failed to state a cognizable constitutional claim.  (*Id.* at 13-14).

In a December 2, 2015 Order to Dismiss in Part, the Court dismissed claims two, four, five and nine as procedurally defaulted.  (Docket No. 18).  The Court ordered Respondents to file an Answer addressing the merits of exhausted claims one, three, six, seven, eight and ten.  (*Id*.).

The Court reviews claims one, three, six, seven, eight, and ten below under the AEDPA standard of review.

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).  In particular, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *Id.* at 98.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision.  *See Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38, 44 (2011).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where
> the facts are at least closely-related or similar to the case *sub judice*.
> Although the legal rule at issue need not have had its genesis in the

5

closely-related or similar factual context, the Supreme Court must have
expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id.* at

1018.

 If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases or (b) the state court confronts a set of facts
> that are materially indistinguishable from a decision of the Supreme Court
> and nevertheless arrives at a result different from [that] precedent.
> *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).  "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts.  *Id.* at 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

 The court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly. Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision

6

is 'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*,

468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity. The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this

analysis, the court "must determine what arguments or theories supported or . . . could

have supported[ ] the state court's decision and then ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the Supreme] Court."  *Id.*

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181

(2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002).

Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the

relevant state court decision was based on an unreasonable determination of the facts

in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the court

must presume that the state court's factual determinations are correct and the petitioner

bears the burden of rebutting the presumption by clear and convincing evidence.  "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and

other papers liberally and hold[s] them to a less stringent standard than those drafted by

attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations

omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a *pro se*

litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991).  A court may not assume that an applicant can prove facts that have not

been alleged, or that a respondent has violated laws in ways that an applicant has not

alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

459 U.S. 519, 526 (1983).  *Pro se* status does not entitle an applicant to an application

of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

8

### III.  ANALYSIS

#### A.  Claim One

For his first claim, Applicant contends that he was denied his constitutional right to be represented by counsel of his choice when the trial court disqualified defense counsel because he was a potential witness. (Docket No. 1, at 10).

#### 1.  Controlling Federal Law

"[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)); *see also Luis v. United States*, ___ S.Ct. ___, 2016 WL 1228690 at *6 (March 30, 2016) (same).

"[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citing *Morris v. Slappy*, 461 U.S. 1, 13-14, (1983) and *Jones v. Barnes*, 463 U.S. 745 (1983)).  Because "courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," *Wheat*, 486 U.S. at 160, the right to be represented by counsel of choice "is circumscribed in several important respects."  *Id.* at 159.

### 2.  State Court Proceedings

In *Pasillas-Sanchez I*, the Colorado Court of Appeals set forth the following

relevant background facts.

> Lozow was initially retained to represent defendant in this case in early
> 2003. A second attorney, Thomas Carberry, was retained in March 2004
> to assist Lozow. In April 2004, the People filed a motion indicating that
> they intended to offer evidence of defendant's prior bad acts, including one
> culminating in an October 2002 drug arrest and defendant's guilty plea to
> a lesser charge. At the hearing on the People's motion, Lozow stated that
> he had represented defendant in that earlier case and was concerned that
> there would be a conflict.

> Defendant then asked that Lozow be permitted to testify. He initially
> proposed that the jury could be given a stipulated instruction that
> contained the undisputed facts to which Lozow intended to testify. Lozow
> offered, as undisputed facts, that (1) he represented defendant in the prior
> matter; (2) the victim paid for the prior representation; (3) defendant was a
> legal resident, but not a citizen; (4) a drug crime conviction would have
> resulted in deportation; (5) defendant pleaded guilty to trespass on
> agricultural lands; and (6) a conviction for trespass to agricultural lands
> could not be a ground for deportation. Defendant further argued that the
> fact that the victim hired Lozow to represent defendant in a drug case
> shortly before her death could lead to the inference that she knew of his
> drug use and still stayed with him.

> The People conceded only that defendant's status as a legal resident was
> undisputed. They refused to stipulate to the remaining facts because they
> were taken out of context and raised additional questions (such as the
> victim's motivation and her knowledge of the consequences of her actions)
> that could not be answered by Lozow.

> At the hearing, Lozow continued to argue that his testimony would be
> used to rebut the People's evidence showing (1) the victim wanted to
> leave defendant and was concerned about his drug habits and (2) the
> victim was "instrumental in keeping [defendant] in the country by providing
> certain information."

> The trial court found that, under Colo. RPC 3.7(a), Lozow would be unable
> to both continue representing defendant and testify at trial and that none
> of the exceptions to that rule was applicable here. It further found that a
> conflict existed between Lozow and defendant which was unwaivable.

Defendant elected to have Lozow testify. The court subsequently issued an order discharging Lozow. At trial, Lozow testified consistently with his offer of proof and was subject to cross-examination.

*Pasillas-Sanchez*, 214 P.3d at 524.[1]

In its analysis, the state appellate court recognized:

The Sixth Amendment right of criminal defendants to counsel of their choice is not absolute; courts have an independent interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *People v. Frisco*, 119 P.3d 1093, 1095 (Colo.2005); *see People v. Harlan*, 54 P.3d 871, 876 (Colo.2002) (disqualification of a defendant's counsel of choice takes place to remedy situations in which continued representation would in some way "tarnish the judicial process"). Disqualification is proper when it appears reasonably necessary to ensure "the integrity of the fact-finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system." *People v. Garcia*, 698 P.2d 801, 806 (Colo.1985) (quoting *People ex rel. Younger v. Superior Court*, 86 Cal.App.3d 180, 150 Cal.Rptr. 156, 158 (1978)).

*Id.*

The Colorado Court of Appeals went on to discuss Colo. RPC 3.7, which precludes a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness, unless: the testimony relates to an uncontested issue; the testimony relates to the nature and value of legal services rendered in the case; or,

---

1 *See also* State Court R. 11/19/04 Hr. Tr. at 91-117; Court File, December 27, 2004 Order, at 709-10.  In the state district court's December 27, 2004 Order, the court refers to a hearing held on December 16, 2004. State Court R., Court File, at 709.  However, the transcript of the December 16, 2004 Hearing was not included in the CD containing the official state court record that was filed in this Court on December 15, 2015.  On March 1, 2016, the Court therefore issued an Order directing Respondents to supplement the state court record with a copy of the December 16, 2004 hearing transcript.  (Docket No. 24).  In response to the March 1, 2016 Order, a state court reporter filed an affidavit averring that the minute orders in Denver District Court Case No. 03CR783 indicate that no hearing was held on December 16, 2004, and, therefore, there is no transcript to prepare. (*See* Docket No. 25).

disqualification of the lawyer would work a substantial hardship on the client. *Id.* at 525.

The Court of Appeals then stated:

> Here, although the trial court did not make an explicit finding as to the necessity of Lozow's testimony, the court found that (1) the subject of Lozow's testimony was how the victim had approached him to offer information helpful in preventing defendant from being deported as a result of a drug conviction; (2) this testimony was material to a central issue in the case, that is, the nature of the relationship between defendant and the victim; and (3) defendant and Lozow were the only two people who could testify to this information. The facts and circumstances of this case demonstrate that the trial court did not abuse its discretion in finding that Lozow was likely to be a necessary witness on defendant's behalf.
>
> However, a determination that the lawyer's testimony is necessary to the proceeding does not automatically disqualify the lawyer. The lawyer may assume the dual role at trial if at least one of the exceptions enumerated in Colo. RPC 3.7(a) is satisfied. *See Fognani* [*v. Young*], 115 P.3d [1268,] 1274 [(Colo. 2005)].

*Id.*[2]

The state appellate court considered the exceptions set forth in Colo. RPC 3.7(a), and analyzed whether Mr. Lozow's testimony was about an uncontested issue or if his disqualification would be a substantial hardship to the Applicant. *Id.*

The state appellate court agreed with the trial court that Mr. Lozow's testimony would not have related to an uncontested issue because a central issue in the case was "the nature and status of the relationship between defendant and the victim" and the attorney's testimony would be relevant to "the heart of the truth as to whether this was a

---

2 *See also* State Court R., 11/19/04 Tr. at 101-109.

homicide or a suicide."3   *Id.* at 526.  Consequently, the state appellate court concluded

that the first exception to Colo. RPC 3.7(a) did not apply.  *Id.* at 526-27.

Next, the Colorado Court of Appeals determined that there was "adequate basis

in the record to support the trial court's conclusion that preventing Lozow from testifying

would not be a substantial hardship on defendant . . . ." *Id.* at 527. The appellate court

based its determination on the trial court's findings that "(1) defendant was still

represented by Carberry, and so he would retain at least one counsel of choice; (2)

there were only two sources of information on this issue–Lozow and defendant; and (3)

it would undercut defendant's opportunity to freely choose whether to testify at trial if

Lozow remained as counsel." *Id.4*.

The Colorado Court of Appeals then concluded that absent disqualification of

defense counsel, the trial could not be conducted in fairness to all parties.  Specifically,

the court agreed with the trial court's findings that

> there was an "actual and substantial conflict" between defendant and
> Lozow that could not be waived. The court determined that, while
> defendant was clearly entitled to counsel of his choosing, Lozow was the
> sole source of the information, other than defendant, and allowing Lozow
> to continue the representation would undermine the public's interest in
> maintaining the integrity in the judicial system because of the violation of
> Colo. RPC 3.7(a). The court assigned independent counsel to determine
> whether the conflict could be waived, and that counsel determined that
> Lozow's testimony "could be critical and even outcome determinative if

---

3 The trial court found that (1) Mr. Lozow's offer of proof was that the victim produced information that
assisted Mr. Lozow in negotiating a plea bargain in the earlier criminal case that would allow defendant to
remain in the country; (2) the inference to be drawn from those facts was that the victim did not want
Applicant to be deported and "inferentially" would want him to remain in the country; and (3) Mr. Lozow's
testimony would be offered to rebut the People's evidence that the victim was "disgusted" with defendant's
drug problem and wanted to get away from him**.** State Court R.,11/19/04 Hrg. Tr. at 102-105.

4*See also* State Court R., 11/19/04 Hrg. Tr. at 107-109.

> believed by the jury." The court concluded this was a conflict that
> defendant could not waive.

*Id.* at 527-28.5  The Colorado Court of Appeals determined that the trial court did not err

in disqualifying counsel and in ruling that counsel not both testify and represent the

Applicant because "Lozow was a critical witness to establish defendant's defense. If

Lozow were prohibited from testifying, it would have been fundamentally unfair to allow

him to continue to represent defendant, thereby leaving defendant as the only remaining

source of 'critical and outcome determinative information.'"  *Id.* at 528.

### 3.  Application of AEDPA Standard of Review

Under § 2254(e)(1), the state court's factual findings are presumed correct.

Further, the Court has carefully reviewed the state court record, which fully supports

those findings.   Applicant does not point to any clear and convincing evidence in the

record to rebut the state courts' findings that a conflict of interest between Applicant and

Mr. Lozow existed before trial based on Mr. Lozow's knowledge of facts relating to a

material issue at trial (i.e., the nature of the relationship between Applicant and the

victim)–information known only to Applicant and Mr. Lozow.6

In evaluating whether the Colorado Court of Appeals' decision was contrary to, or

an unreasonable application of federal law, under § 2254(d)(1), the Court observes that

---

5 *See also id.* at 109-125; State Court File at 709-10.

6 The Court notes that these facts were established at the November 19, 2004 hearing and were the basis
for the trial court's decision to disqualify defense counsel.  Applicant does not assert that any information
provided to the state court at the follow up hearing on December 16, 2004 (for which there is no transcript)
contradicted the state court's findings that an "actual" and "substantial" conflict existed between Applicant
and defense counsel.

14

the Supreme Court's decisions in *Gonzalez-Lopez* and *Caplin& Drysdale*, *Chartered* are factually distinguishable from the present case and, therefore, do not provide the applicable rule of law.  *See House*, 527 F.3d at 1016, 1018.

In *Gonzales-Lopez*, the parties did not dispute the Eighth Circuit's determination that the defendant's right to be represented by counsel of his choice was violated when the district court wrongfully denied counsel's motions for admission *pro hac vice* based on the court's erroneous determination that counsel had violated the state's professional rules of conduct by communicating with a represented party in the case at bar and in a separate proceeding.   548 U.S. at 143-144.  Instead, the issue before the Supreme Court was whether the defendant was also required to demonstrate prejudice to prevail on a Sixth Amendment claim.  *Id.* at 144-45.  The Supreme Court held that the deprivation of the Sixth Amendment right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received."  *Id.* at 148.  The Court further held that "the wrongful deprivation of choice of counsel is 'structural error,' immune from review for harmlessness, because it 'pervades the entire trial.'"  *Id.* at 150.  The Supreme Court concluded its opinion in *Gonzalez-Lopez* by stating that "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice.," *id.* at 151, including the "trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness."  *Id.* at 152 (citing *Wheat*, 486 U.S. at 163-164).

In *Caplin & Drysdale, Chartered*, the Supreme Court rejected the petitioner's claim that criminal defendants have a Sixth Amendment right to use assets that are the Government's – assets adjudged forfeitable– to pay attorney's fees, merely because those assets are in the defendant's possession.  491 U.S. at 632-33; *Cf. Luis*, 2016 WL 1228690 at *5 (holding that the pretrial restraint of a defendant's legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment).

Because *Gonzalez-Lopez* and *Caplin & Drysdale, Chartered* are factually distinguishable in material respects from Applicant's case, the Supreme Court rule applicable here is found in *Wheat*.  In *Wheat*, the Supreme Court recognized that the Sixth Amendment right to be represented by counsel of choice  "is circumscribed in several important respects" because "courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  *Wheat*, 486 U.S. at 159-60. The Supreme Court instructed the federal district courts to "recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at 164.  The Court further stated that the "evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.*

In evaluating whether a state court decision was an unreasonable application of federal law, the Court must consider the specificity of the applicable rule.  "The more

general the rule, the more leeway courts have in reaching outcomes in case-by-case

determinations." *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Applying the general rule and parameters announced in *Wheat*, the Court finds

that the Colorado Court of Appeals' determination that disqualification of Applicant's

counsel of choice was warranted because of an actual or potential conflict arising from

Mr. Lozow's dual role as an advocate and potential witness on a material trial issue that

was known only to Applicant and Mr. Lozow, was not "so lacking in justification that

there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement. *Harrington*, 562 U.S. at 102.   *See also*

*Kennedy v. Stewart*, No. 13-1077, 567 F. App'x 433, 435 (6th Cir. June 9, 2014)

(unpublished) (rejecting state prisoner's Sixth Amendment claim under AEDPA standard

of review because "the state court reasonably balanced the fairness in preventing an

attorney from doubling as both an advocate and witness during the same trial against

Kennedy's choice of counsel."); *United States v. Collins*, 920 F.2d 619, 626 (10th Cir.

1990) (stating that courts "must balance a defendant's constitutional right to retain

counsel of his choice against the need to maintain the highest standards of professional

responsibility, the public's confidence in the integrity of the judicial process and the

orderly administration of justice.").

The Court further finds that the state appellate courts' determination that

Applicant may not have received a fair trial if Mr. Lozow was allowed to both represent

him at trial and testify as a trial witness was reasonable based on the evidence

presented in the state court proceeding.   *See* § 2254(d)(2).   Applicant argues in his

Reply that Mr. Lozow's trial testimony "was entirely devoted to collateral matters" and "had absolutely nothing to do with the matter for which Lozow was disqualified" (Docket No. 23 at 5-6).  However, Applicant's characterization of Mr. Lozow's trial testimony is contradicted by the state court record.7  Moreover, a trial court assesses a potential conflict of interest between counsel and a defendant "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly" and, because "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," the trial court's assessment of even a potential conflict is accorded "broad latitude."  *Wheat*, 486 U.S. at 162-63.   Under this deferential standard, it cannot be said that the state court's determination, following an evidentiary hearing,  that disqualification of Mr. Lozow was warranted, was unreasonable.

Applicant is not entitled to federal habeas relief for claim one.

## B.  Claim Three

In claim three, Applicant contends that was deprived of a fair trial when the trial court denied his challenge for cause to a prospective juror.  (Docket No. 1 at 10).

### 1.  Controlling Federal Law

The Sixth and Fourteenth Amendments guarantee a defendant the right to an impartial jury. *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).  To be "impartial," a juror must be able to "lay aside his opinion and render a verdict based on the evidence presented in court."

---

7*See* State Court R., 7/28/05 Trial Tr. at 4-11.

*Patton v. Yount*, 467 U.S. 1025, 1036 n. 12 (1984). Any claim that the jury was not

impartial must focus on the jurors who ultimately sat. *Ross*, 487 U.S. at 86 (although

trial court erred by failing to dismiss prospective juror for cause, error did not deprive

petitioner of an impartial jury or of any interest provided by the State where defense

exercised peremptory challenge to remove him). *See also United States v. Martinez-*

*Salazar*, 528 U.S. 304, 307 (2000) ("[I]f the defendant elects to cure [the trial court's

error in refusing to dismiss a prospective juror for cause] by exercising a peremptory

challenge, and is subsequently convicted by a jury on which no biased juror sat, he has

not been deprived of any rule-based or constitutional right.").

### 2.   State Court Proceedings

In *Pasillas-Sanchez I*, the Colorado Court of Appeals provided the following

background to Applicant's claim:

> During voir dire, a prospective juror stated that her first cousin was a
> commander in the police department that investigated the case. Defense
> counsel asked her whether that would affect her decision-making abilities,
> given that there were allegations of "sloppy" police work in this case, and
> she responded that she had "no opinion one way or the other about how
> he did his job." However, the next day, the juror volunteered that, after
> further thought, her relationship with her aunt (the mother of the chief of
> police) "probably could create a problem" and could create a hardship for
> her. However, the juror then added that she could fairly try the case and
> could be impartial.
>
> Defendant challenged the juror for cause, which the trial court denied
> because it found the juror "understood her duty" and it would not impose a
> hardship on her. Defendant then exercised his first peremptory challenge
> against the juror and subsequently exhausted all of his other peremptory
> challenges.

214 P.3d at 529.

The Colorado Court of Appeals determined that the trial court did not abuse its discretion in denying the Applicant's challenge for cause because the Applicant had failed to demonstrate any implied or actual bias on the part of the prospective juror. *Id.* at 529-530.

### 3.  Application of AEDPA Standard of Review

The Court finds that the state appellate court's decision was not contrary to or an unreasonable application of federal law because the juror who Applicant challenged for cause was ultimate excused by a peremptory challenge and did not sit on his jury.8 Further, Applicant has never contended that any of the jurors who sat were biased. *See Chavez v. McKinna*, No. 01-1188, 41 F. App'x 319, 321-22 (10th Cir. May 23, 2002) (unpublished) (concluding that "because Ms. Cassel was removed by a peremptory challenge and because Petitioner has failed to establish that there were any biased jurors actually sitting, his claim must fail," citing *Ross*, 487 U.S. at 88).  Accordingly, Applicant is not entitled to habeas relief for his third claim.

### C.  Ineffective Assistance of Counsel Claims

Applicant asserts in claims six, seven, eight and ten that his Sixth Amendment right to the effective assistance of counsel was violated because: counsel failed to investigate critical issues (claim six); counsel failed to consult experts necessary to the defense (claim seven); counsel was ineffective "in pre-trial, trial, and post-trial situations involving competence, deligence [sic] scope of representation, and advising, as well as

---

8 *See* State Court R., 7/8/05 Trial Tr. at 53.

other deficiencies" (claim eight); and, counsel denied Applicant access to his discovery

materials (claim ten).  (Docket No. 1 at 10-11).

Respondents argued in the Pre-Answer Response that the ineffective-

assistance-of-counsel (IAC) claims were not pled adequately under Rule 4 of the Rules

Governing Section 2254 Cases in the United States District Courts.  (Docket No. 11 at

17-18).  Respondents further maintained that, in any event, the claims are exhausted

only with regard to the allegations that Applicant presented to the state appellate courts.

(*Id.* at 18-19).

In his state post-conviction proceeding, Applicant presented the following claims

to the Colorado Court of Appeals:

> 1. "Trial counsels [sic] advice regarding whether to accept the offered plea agreement of 16-48 years or proceed through trial to verdict amounts to deficient performance."  (Docket No. 11-8 at 16-20).

> 2. "Trial counsels [sic] advice regarding Mr. Pasillas-Sanchez [sic] right to testify was deficient performance because it overbore the will of Mr. Pasillas-Sanchez preventing him from exercising his fundamental right to testify on his own behalf."  (*Id.* at 20-24).

> 3. "Trial counsel provided deficient representation by failing to conduct an adequate investigation into potential witnesses, experts, and defenses." (*Id.* at 24-27).

> 4. "Trial counsel provided deficient representation by failing to review discovery with Mr. Pasillas-Sanchez so that he could understand what evidence was against him and participate with his defense." (*Id.* at 27-29).

In the December 2, 2016 Order, the Court agreed with Respondents as to the

following characterization of Applicant's IAC claims: "habeas claims six and seven can

be read to encompass state claim three; habeas claim eight encompasses state claims

one and two; and, habeas claim ten encompasses state claim four."  (Docket No. 18 at

10; Docket No. 11 at 19).   The Court then found that Applicant had exhausted his state court remedies with regard to the allegations presented to the Colorado Court of Appeals.   (Docket No. 18 at 11-12).9   The merits of those allegations are addressed below.

### 1.  Controlling Federal Law

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different). *Strickland v. Washington*, 466 U.S. 668 (1984).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).   "With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

---

9 Applicant argues in his Reply (Docket No. 23) that counsel was ineffective in failing to hire DNA and mental health experts, and performed deficiently in other ways that were not presented to the Colorado Court of Appeals.   The Court will not address these allegations because Applicant failed to exhaust his available state court remedies. Further, as discussed in the December 2, 2016 Order to Dismiss in Part, Applicant has committed an anticipatory procedural default of the claims because if he attempted to assert them in a new state post-conviction motion, the motion would be denied as successive. See Colo. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in . . .  a postconviction proceeding previously brought. . . ." with exceptions not applicable here); *Welch v. Milyard*, No. 11-1214, 436 F. App'x 861, 865-66 (10th Cir. Aug. 18, 2011) (unpublished) (concluding that claim barred from state court review under Colo. Crim. P. Rule 35(c)(3)(VII) was procedurally defaulted on federal habeas review). Applicant had never alleged facts to satisfy the cause and prejudice standard to excuse his procedural default, or demonstrated that a fundamental miscarriage of justice will result if the Court does not review the merits of his defaulted claims.   *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 and 750 (1991).

"The likelihood of a different result must be substantial, not just conceivable."

*Strickland*, 466 U.S. at 693.

"Surmounting *Strickland*'s high bar is never an easy task." *Harrington*, 562 U.S.

at 105 (internal quotation omitted).  "Establishing that a state court's application of

*Strickland* was unreasonable under §2254(d) is all the more difficult."  *Id.*  "When

§2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s

deferential standard."  *Id.*

### 2.  Claims Six and Seven

Claims six and seven encompass Applicant's allegations in the state post-

conviction proceeding that defense counsel:  "failed to interview friends of the victim and

friends of the defendant who could have provided specific details regarding the victims

[sic] personal history, trauma, social upbringing, mental health history, history of drug

abuse, and propensity to act in a self-destructive manner" (Docket No. 11-8 at 24); "was

unaware that an expert he had hired on blood spatter to represent the defense side of

the issue had been interviewed by the prosecutor's investigator" (*id.*); and, that counsel

"failed to hire a competent defense expert regarding the blood spatter evidence" and

that the "defense expert's testimony was incompetent and resulted in prejudice to the

defendants."  (*Id.* at 25).

### a.  state court proceedings

In *Pasillas-Sanchez II*, the Colorado Court of Appeals analyzed the IAC
allegations as follows:

. . . In his motion, [Pasillas-Sanchez] listed eight potential witnesses who would have testified to the victim's history of attempting suicide, and her "troubled life," including that she ran away from home and that she often suffered from depression and low self-esteem.

Pasillas-Sanchez claims that this testimony would have helped a reasonable defense attorney construct a "viable defense of the case." However, he does not specify exactly what that defense would have been, or how the potential witnesses' testimony would have supported his theory of defense.

Pasillas-Sanchez also asserts he was prejudiced by counsel's unawareness that the defense's blood spatter expert had been interviewed by the prosecution. As a result, he maintains, the prosecutor was able to effectively impeach the defense's expert. He argues that, had counsel discovered this prior to trial, he would have been better prepared when the prosecution used notes from the interview to attack the expert's credibility.

However, in *Pasillas-Sanchez I,* a division of this court considered this same argument and determined that Pasillas-Sanchez was not prejudiced by the prosecution's use of interview notes during cross-examination of the blood spatter expert. No. 05CA2625, slip op. at 20-21. Specifically, the division concluded there was no prejudice because (1) the prosecution gave the interview notes to defense counsel during cross-examination with ample time for counsel to prepare for redirect examination the next day; (2) on redirect, Pasillas-Sanchez was able to fully rehabilitate the expert by clarifying what was said during the interview with the prosecutor and investigator, and explain any inconsistency in his testimony; and (3) Pasillas-Sanchez was given an additional opportunity to follow up on testimony after the prosecution's recross-examination. *Id.*

Therefore, we conclude that the trial court did not err when it rejected Pasillas-Sanchez's claim that he received ineffective assistance of counsel because defense counsel failed to interview witnesses who would have supported his defense theory, and was unaware that the defense's blood spatter expert had been interviewed by the prosecution.

(Docket No. 11-10, at 12-15; *see also* Docket No. 11-4 at 18-22).

### b.  application of AEDPA standard of review

The Court finds that the state appellate court's resolution of Applicant's IAC

claims was consistent with *Strickland*.  Applicant fails to explain how counsel's failure to

investigate witnesses who allegedly could have testified to the victim's history of

attempting suicide, and her "troubled life," would have affected the outcome of his trial.

Conclusory assertions are insufficient to support an ineffective assistance of counsel

claim.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1228-29, 33-34 (10th Cir. 2007)

(allegations based on unsubstantiated assertions of fact are not sufficient to satisfy

*Strickland*); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994)

(ineffective assistance claim fails "where [petitioner's] allegations are merely conclusory

in nature and without supporting factual averments").  Moreover, the jury was not

persuaded by the testimony of a defense witness that the victim, who had been his

close friend, talked about committing suicide on more than one occasion.10

In addition, Applicant has not established that he was prejudiced by defense

counsel's unawareness, before trial, that Mr. Snyder, the defense expert in bloodstain

patter analysis and crime reconstruction, had been interviewed by the prosecution

before trial.  The state appellate court's factual findings in *Pasillas-Sanchez I,* which

were relied on by the court in *Pasillas-Sanchez II*, are presumed correct and are

supported by the state court record.11  Applicant does not point to any clear and

---

10State Court R., 7/28/05 Trial Tr. at 72, 83.

11 *Id.,* 7/25/05 Trial Tr. at 90-101; 7/26/05 Trial Tr. at 34-42; 97-139; 162-170.

convincing evidence to show that he was prejudiced by the prosecution's use of interview notes in cross-examining Mr. Snyder, where defense counsel was provided copies of the notes during trial, was allowed to review them overnight, and was able to rehabilitate the expert during redirect.

And, finally, although the Colorado Court of Appeals did not specifically address Applicant's allegations that defense counsel performed deficiently by hiring an incompetent blood pattern analysis expert, the federal habeas court nonetheless reviews the claim under the AEDPA deferential standard of review. *See Harrington,* 562 U.S. at 99 (stating that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

The state court record reflects that the expert, Mr. Snyder, had an extensive background and had testified previously as an expert in several criminal cases.12 Further, the prosecution did not object to Mr. Snyder's qualifications to testify as an expert in bloodstain pattern analysis and crime reconstruction.13  As such, Applicant has failed to demonstrate that defense counsel performed deficiently by retaining an incompetent expert.  In addition, Applicant has not demonstrated that he was prejudiced by the decision to retain Mr. Snyder.  The prosecution's expert in blood stain pattern analysis and crime reconstruction opined that Applicant shot the victim in the head, then

---

12 State Court R., 7/22/05 Tr. at 56-76,105.

13 *Id.* at 76, 100.

picked up the gun and placed it under the victim's hand.14  By contrast, Applicant's expert opined that the evidence was consistent with a self-inflicted gunshot wound, rather than a homicide.15  Applicant fails to explain how a different defense expert would have testified more persuasively so as to create a reasonable probability that Applicant would have been exonerated.  Mere speculation about a more favorable outcome cannot sustain a Sixth Amendment claim.  *See Strickland*, 466 U.S. at 693.

Accordingly, Applicant is not entitled to federal habeas relief for claims six and seven.

### 3.  Claim Eight

In the state post-conviction proceeding, Applicant argued in his opening brief that: (1) "Trial counsels [sic] advice regarding whether to accept the offered plea agreement of 16-48 years or proceed through trial to verdict amounts to deficient performance" (Docket No. 11-8 at 16-20); and (2) "Trial counsels [sic] advice regarding Mr. Pasillas-Sanchez [sic] right to testify was deficient performance because it overbore the will of Mr. Pasillas-Sanchez preventing him from exercising his fundamental right to testify on his own behalf" (*id.* at 20-24).

---

14 State Court R., 7/20/05 Trial Tr. at 128-29.

15 *Id.*, 7/25/05 Trial. Tr. at 41-49.

### a.  advice to reject plea offer

### i.  state court proceedings

Applicant asserted in his state post-conviction motion that he rejected a 16-48-year plea offer from the government based on defense counsel's erroneous advice that if he was found guilty at trial, all of the sentences would run concurrently because the criminal offenses arose from the same criminal episode.16  Applicant maintained that if he had been given the correct sentencing information, he would have accepted the government's plea offer.17

The state district court rejected Applicant's IAC claim on the ground that Applicant had not provided any affidavits to support his assertion that a plea offer was made during jury deliberations (a claim contradicted by the Government), nor did Applicant maintain that the trial court would have accepted a plea offer made after the case was submitted to the jury.18  The state district court further found that there was no support in the record for Applicant's assertion that defense counsel misinformed him about the possible sentence he faced.19

In *Pasillas-Sanchez II*, the Colorado Court of Appeals rejected Applicant's IAC allegations on the following grounds:

> Pasillas-Sanchez alleges that during jury deliberations, the prosecution
> offered the defense a plea bargain with a range of sixteen to forty-eight

---

16 *See* State Court R., Court File, at 962, 990-91.

17 *See id.*

18 *Id.* at 1010.

19 *Id.*

years. He further asserts that his counsel then told him that the trial was going well and incorrectly advised him that, if he were convicted of the possession of controlled substance charges, his sentences on those counts would merge because they were part of the same criminal episode. He alleges that counsel erred by not explaining that even the non-murder charges carried possible sentences greater than forty-eight years, the maximum possible sentence under the purported plea offer.  Pasillas-Sanchez claims that, but for counsel's incorrect advice, he would have accepted the prosecution's plea offer and that his sentence would have been less severe.

However, Pasillas-Sanchez did not allege in his motion and does not argue on appeal that the trial court would have accepted the plea offer at such a late stage in the proceedings, after the case had been submitted to the jury. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("There is, of course, no absolute right to have a guilty plea accepted."). The trial court set a mandatory dispositional cutoff date of April 20, 2004, over one year prior to when Pasillas-Sanchez alleges the prosecution made its plea offer. By the time of the purported plea offer, the case had been submitted to the jury. Pasillas-Sanchez makes no argument as to why the trial court would have accepted a plea offer so long after the dispositional cutoff date, and after the case had been submitted to the jury. *See People v. Jasper*, 17 P.3d 807, 814 (Colo. 2001) (holding that a trial court may reject a plea bargain solely for failure to tender it before a court-imposed plea deadline). Because Pasillas-Sanchez does not allege specific facts asserting why the trial court would have accepted the terms of the plea offer at such a late juncture, his argument fails to satisfy the necessary prejudice showing.

Therefore, we conclude that the trial court did not err in rejecting Pasillas-Sanchez's claim that he received ineffective assistance of counsel when his trial counsel advised him that his sentences would run concurrently, not consecutively.

(Docket No. 11-10 at 7-9).

### ii.  application of AEDPA standard of review

The *Strickland* standard applies to claims of ineffective assistance of counsel in

the plea bargain context.  *See Hill v. Lockhart*, 474 U.S. 52, 57-58, 59 (1985) ("The . . .

'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective

performance affected the outcome of the plea process"); *see also Missouri v. Frye*, ___

U.S. ___, 132 S.Ct. 1399 (2012) (holding that a defendant must show the outcome of

the plea process would have been different with competent advice).

In *Lafler v. Cooper*, ___ U.S. ___ , 132 S.Ct. 1376 (2012), the Supreme Court

held that the Sixth Amendment right to counsel is violated when a defendant receives a

harsher sentence as a result of his or her attorney's constitutionally deficient advice to

reject a plea bargain. 132 S.Ct. at 1390-91.   To establish a Sixth Amendment violation,

> a defendant must show that but for the ineffective advice of counsel there
> is a reasonable probability that the plea offer would have been presented
> to the court (i.e., that the defendant would have accepted the plea and the
> prosecution would not have withdrawn it in light of intervening
> circumstances), *that the court would have accepted its terms*, and that the
> conviction or sentence, or both, under the offer's terms would have been
> less severe than under the judgment and sentence that in fact were
> imposed.

132 S.Ct. at 1385 (emphasis added).

Because *Lafler* was decided before the Colorado Court of Appeals issued its

December 11, 2014 opinion in *Pasillas-Sanchez II*, it is the "clearly established law" that

governs the Court's review of Applicant's IAC claim under § 2254(d)(1). *See Greene*,

132 S.Ct. at 44 ("clearly established law" under  § 2254(d)(1) refers to the law that

existed at the time of the relevant state-court decision).

The Colorado Court of Appeals rejected Applicant's claim under the prejudice

prong of the *Strickland* inquiry, on the basis that Applicant had not alleged facts to show

that the trial court would have accepted a plea agreement after the case went to the jury

for deliberations.  Although the Colorado Court of Appeals did not rely expressly on

*Lafler*, this Court does not presume that the state appellate court was unaware of the

Supreme Court's decision. *See Woodford*, 537 U.S. at 24 (stating that the federal habeas court applies a "presumption that state courts know and follow the law."). Indeed § 2254(d)'s 'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Id. See also Early v. Packer*, 537 U.S. 3, 8 (2002) ("[AEDPA] does not require citation of our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). The federal court should neither engage in hyper-technical analysis nor require "formulary statement[s]" that ignore "the fair import of the [state court's] opinion." *Packer*, 537 U.S. at 9. Instead, the task of the federal habeas court is to determine what standard the state court actually applied to resolve the petitioner's claim. *See Lafler*, 132 S.Ct. at 1390.

The Colorado Court of Appeals' decision implicitly recognized the Supreme Court's holding in *Lafler* that to show prejudice in connection with the rejection of a plea offer, the habeas petitioner must demonstrate that the trial court would have accepted a plea agreement. The state court record does not contain any information to suggest that the trial court would have accepted a plea agreement entered into at the conclusion of a four week trial, when the case had been submitted to the jury. And, review of a state court decision under § 2254(d)(1) is limited to the record before the state court. *See Pinholster*, 563 U.S. at 181. *See also Calvert v. Dinwiddie*, No. 11-5044, 461 F. Appx 729, 734 (10th Cir. Feb. 10, 2012) (unpublished) (rejecting claim that counsel was ineffective in failing to communicate a plea offer because the state court record failed to

substantiate the claim and AEDPA review is limited to the state court record under

*Pinholster*).

In sum, the Court finds that the state appellate court's decision was not contrary

to, or an unreasonable application of, *Lafler*, nor was the decision based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  Accordingly, Applicant is not entitled to federal habeas relief for his

IAC claim premised on Applicant's rejection of a plea offer made during jury

deliberations.

### a.  coercion to not testify

### i.  state court proceedings

Applicant argued in his state post-conviction motion that defense counsel

coerced his decision not to testify because

> defense attorney Cranberry kept telling defendant in a very intimidating
> manner that he should not testify and that "we've already got the case
> won."  "There's no need for you to testify since we've won already."
> Defendant was still adamant about testifying, so defense counsel went to
> Defendant's family members and convinced them that the case was
> already won and that they must do all they can to influence the Defendant
> not to testify.  Now both defense counsel and family members were
> intimidating me and filling me with fear that went against my better
> judgment.  Under this pressure, and even though I wanted to testify, I
> relented to these "orders" that defense counsel was giving me.[20]

---

20 State Court R., Court File at 966.

The state trial court rejected this claim on the ground that Applicant made a knowing, intelligent and voluntary decision not to testify, as evidenced by his statements on the record to the trial court following the three *Curtis* advisements.21

In *Pasillas-Sanchez II*, the Colorado Court of Appeals rejected Applicant's IAC claim on the following grounds:

> Here, Pasillas-Sanchez argues that his counsel "essentially browbeat" him into not testifying. He further asserts that counsel asked his family to pressure him into not testifying.
>
> However, the trial court gave Pasillas-Sanchez a *Curtis* advisement on three separate occasions. During the third and final advisement, the trial court asked Pasillas-Sanchez, "Now, is this new decision you've made not to testify, is that the result of any undue influence, force or coercion on the part of anyone?," to which he responded, "No, sir." Pasillas-Sanchez repeatedly assured the court that his decision not to testify was made of his own free choice, and that he was not under the influence of drugs or alcohol.  He does not allege that this *Curtis* advisement was ineffective. Nor has Pasillas-Sanchez alleged any specific acts on the part of trial counsel that prevented him from truthfully responding to the trial court during his *Curtis* advisement.
>
> Further, contrary to his assertions, the record establishes that, earlier, Pasillas-Sanchez's defense counsel was willing to allow him to testify. During the second *Curtis* advisement, counsel notified the court that Pasillas-Sanchez wished to testify.
>
> Thus, the record shows that Pasillas-Sanchez knew of his right to testify, considered his options, and decided not to testify. That defense counsel successfully convinced Pasillas-Sanchez not to testify does not make his representation ineffective.

---

21 *Id.* at 1011-12, citing *People v. Curtis*, 681 P.2d at 504 (Colo. 1984).  In *Curtis*, the Colorado Supreme Court held that if a criminal defendant wishes to waive his constitutional right to testify, a trial court must–on the record and out of the presence of the jury–advise the defendant of his right and obtain a knowing, intelligent and voluntary waiver. *Id.* at 514-15.

> Therefore, we conclude that the trial court did not err in rejecting Pasillas-Sanchez's claim that he received ineffective assistance of counsel when counsel coerced him into not testifying.

(Docket No. 11-10 at 10-12).22

### ii. application of AEDPA standard of review

The Supreme Court has recognized that "the representations of the defendant, his lawyer, and the prosecutor at [a court] hearing, as well as any findings made by the judge . . . , constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Further, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74. *See also Kidwell v. Martin*, No. 12-5042, 480 F. App'x 929, 934 (10th Cir. May 21, 2012) (affirming district court's rejection of claim that defense counsel coerced the petitioner not to testify, where the petitioner told the court during trial that his lawyers were not forcing him to testify and that it was his free and voluntary choice to testify, citing *Blackledge*).

Applicant did not submit a sworn affidavit to the state court to support his assertions in the state post-conviction proceeding that defense counsel coerced him into not testifying. Instead, he relied in the state court proceeding, and in this federal habeas proceeding, on unsupported, self-serving allegations. Applicant's allegations do not constitute clear and convincing *evidence* to rebut the state appellate court's factual findings that his decision not to testify was knowing, intelligent and voluntary.

---

22 *See also* State Court R., 8/1/05Trial Tr. at 34-66.

*See Bryson v. Ward*, 187 F.3d 1193, 1204 (10th Cir. 1999).  And again, because the Colorado Court of Appeals decided the claim on the merits, the Court's review under § 2254(d) is limited to the record before the state court.  *Pinholster*, 563 U.S. at 181.

Moreover, even if defense counsel "strongly urged [Applicant]" not to testify, that conduct is proper where the attorney believes that action is the best course.  *See Nicholls v. Bigelow*, 558 F. App'x 778, 787 (10th Cir. March 11, 2014) (unpublished) (in context of guilty plea).

The Court finds that the Colorado Court of Appeals' resolution of Applicant's claim was consistent with *Strickland* and was reasonable in light of the colloquy between the trial judge and Applicant, which reflects that Applicant knowingly, intelligently and personally waived his right to testify.  As such, Applicant is not entitled to habeas relief for claim eight.

### 4.  Claim Ten

For his tenth claim, Applicant contends that his Sixth Amendment right to the effective assistance of counsel was violated because counsel denied Applicant access to discovery materials. (Docket No. 1 at 11).

Applicant argued in his state post-conviction proceeding that "[t]rial counsel provided deficient representation by failing to review discovery with Mr. Pasillas-Sanchez so that he could understand what evidence was against him and participate with his defense." (Docket No. 11-8 at 27-29).

### a. state court proceedings

In *Pasillas-Sanchez II*, the Colorado Court of Appeals addressed the claim as

follows:

> Finally, Pasillas-Sanchez contends that his trial counsel was ineffective because counsel denied him access to discovery, preventing him from participating in his defense. Specifically, he asserts that without having access to discovery materials, he was unable to determine "any kind of a defense strategy, or provide any meaningful input to his attorney."

> However, Pasillas-Sanchez does not specify to what discovery materials he was denied access, what alternative defense strategies he would have deployed, or how the outcome of the trial would have been different. [State case law citation omitted].

> Therefore, we conclude that the trial court did not err in rejecting Pasillas-Sanchez's claim that he received ineffective assistance of counsel when his counsel denied him access to discovery information.

(Docket No. 11-10 at 15-16).

### b. application of AEDPA standard of review

The Court finds that the state appellate court's resolution of Applicant's claim was

consistent with *Strickland* because conclusory assertions, without supporting factual

allegations, are insufficient to state a claim for relief.  *See Cummings*, 506 F.3d at 1228-

29, 1233-34.  Applicant therefore is not entitled to federal habeas relief for claim ten.

### D.      Request for Evidentiary Hearing

In the § 2254 Application, Applicant asks the Court to "conduct such hearings as

may be required, and upon hearing, grant Applicant relief from his unlawful convictions

and sentences."  (Docket No. 1 at 14).  The Court construes this request liberally as a

request for an evidentiary hearing.

Where a state habeas petitioner has presented his claims to the state courts and the federal habeas court has determined that he is not entitled to relief under § 2254(d), there is no basis for the federal court to grant an evidentiary hearing.  *See Pinholster*, 563 U.S. at 181-82.  *See also Sanchez v. State of Wyoming*, No. 13-8077, 577 F. App'x 883, 885 (10th Cir. Sept. 15, 2014) (unpublished) ("having found that § 2254(d) barred a grant of habeas relief, the district court also did not err in denying Mr. Sanchez an evidentiary hearing under § 2254(e)(2)," citing *Pinholster*); *see also Parrino v. Archuleta*, ___ F. App'x ___, 2015 WL 6144079 at *2 (10th Cir. Oct. 20, 2015) (unpublished) (same).

Because the claims asserted in the § 2254 Application were resolved on the merits by the Colorado Court of Appeals, and this Court has determined, pursuant to § 2254(d)(1) and (2), that the state appellate court's resolution of the claims was not contrary to, or an unreasonable application of clearly established Federal law, and was reasonable in light of the evidence presented in the state court proceeding, Applicant is not entitled to an evidentiary hearing.

## IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 1), filed, *pro se*, by Applicant, Cesar Pasillas-Sanchez, on July 29, 2015, is DENIED and this action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. ' 1915(a)(3) that any appeal from this order would not be taken in good faith  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated April 7, 2016, at Denver, Colorado.

BY THE COURT:

_____
R. BROOKE JACKSON
United States District Judge